JOHN S. ADAMS & others *vs.* CHARLES T. PLUNKETT & others.

Berkshire. September 16, 1930. — February 24, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Constitutional Law,* Impairment of the obligation of contracts. *Adams. Municipal Corporations,* Officers and agents, Contract accepting public gift, Hospital. *Contract,* Of town. *Gift. Charity.*

A lifelong resident of the town of Adams, before his death in October, 1917, began the erection of a hospital with the publicly announced intention of giving it to the town, having stated to those whom he had named as executors in his will that he considered it of the utmost importance to keep the hospital "out of politics" and that the managing board should be chosen in some other manner than by popular vote. After his death, the hospital was completed and equipped at the expense of his estate, and thereafter, pursuant to a warrant "to see if the town will take" the land and the hospital "as a gift to the town . . . subject to the condition that the same shall be used forever as a Hospital for the reception of persons who require relief during temporary sickness, and also subject to the condition that such ordinances, rules and regulations necessary and expedient for the appointment of trustees and their successors and all other officers and agents necessary for the future management of such Hospital shall be made by the present Board of Selectmen and shall be approved in writing by the executors of the will of the said" donor, the town voted in March, 1918, to accept the gift subject to such conditions. After conference, the selectmen, with the approval in writing of the executors, made "ordinances, rules and regulations" which named seven trustees and provided in substance that they should be self-perpetuating. Thereafter, in June, 1918, the property was conveyed to the town subject to the conditions in the town's vote of acceptance, and from 1918 through 1930 annual appropriations were made for the maintenance of the hospital by the town. In April, 1930, St. 1930, c. 32, was accepted by the town and other trustees were elected who by a suit in equity sought to have their right to care for and manage the hospital established. *Held,* that

(1) The substance and effect of the vote of the town, the action by the selectmen and the deed to the town were to render the gift to the town subject to the condition that the members of the managing board of the hospital were to be selected in the future as well as at the outset in the way therein described and agreed upon;

(2) It was within the power of the donor to affix that condition as one upon which alone the gift would be made, and its acceptance did not transcend the power of the town;

(3) There was nothing unreasonable about the plan adopted by the parties for selecting the trustees;

(4) The trustees selected according to the plan of the gift did not constitute a corporation or a private instrumentality: they were to manage a public trust solely for the benefit of the public;

(5) The authority of towns to choose special committees to perform municipal duties not vested by law in designated officers is beyond doubt;

(6) St. 1930, c. 32, was not a valid exercise of legislative power since, in violation of art. 1, § 10, of the Constitution of the United States, it impaired the obligation of the contract made when the gift was accepted by the town subject to conditions validly imposed;

(7) Art. 46, § 2, of the Amendments to the Constitution of the Commonwealth did not affect the situation, both because its effective date was after the making of the contract upon the acceptance of the gift by the town, the obligation of which could not be impaired even by an amendment to the Constitution, and because the enterprise of the hospital was not within the provisions of said § 2, and was within the exceptions therein stated.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Berkshire on July 14, 1930, by John S. Adams, Hubert W. Flaherty, Charles H. Tower, Thomas J. Harvey, Wojciech Prejsnar, Orno R. Herold and Andrew G. Scott, alleging themselves to have been elected as trustees of the W. B. Plunkett Memorial Hospital in the town of Adams under the provisions of St. 1930, c. 32, against Charles T. Plunkett, Henry L. Harrington, Arthur B. Daniels, Cyril Menard, Edwin K. McPeck, Dennis A. Murphy and Peter P. Smith, who claimed the right to retain their offices as trustees under the ordinance adopted upon acceptance by the town of the gift of the hospital, and against the town of Adams, seeking a decree that the plaintiffs were trustees entitled to the care and custody and management of the hospital.

The facts were agreed upon. Material facts are stated in the opinion. By order of Crosby, J., the suit was reserved for determination by the full court.

P. J. Ashe, (W. F. Barrington with him,) for the plaintiffs.

J. Noble, (C. N. Stoddard & S. Vaughan with him,) for the individual defendants.

W. J. Donovan, Town Counsel, for the defendant town, submitted a brief.

RUGG, C.J.  This suit in equity concerns the management of the William B. Plunkett Memorial Hospital in the town of Adams.  The case was reserved upon the pleadings and an agreed statement of facts for determination by the full court.

The pertinent facts are, these:  In February, 1917, William B. Plunkett, a lifelong resident of Adams, publicly announced his intention of building a hospital and giving it to the town of Adams.  The location and extent of the lands which were to constitute the hospital grounds were made known to the officers of the town in the following month.  The erection of the building was commenced and its entire cost was paid by Plunkett so long as he lived, and after his death in October, 1917, his executors completed and equipped the hospital at the expense of his estate.  He talked with his executors about the hospital and communicated to them his desires in respect to the board to manage and control the hospital.  He said that he considered it of the utmost importance to keep the hospital " out of politics " and that the managing board should be chosen in some other manner than by popular vote.  The warrant for the annual meeting of the town in March, 1918, contained this article: " to see if the town will take land, together with a Hospital erected and fully equipped thereon, known as the W. B. Plunkett Memorial Hospital, the same to be accepted as a gift to the town by the late W. B. Plunkett; subject to the condition that the same shall be used forever as a Hospital for the reception of persons who require relief during temporary sickness, and also subject to the condition that such ordinances, rules and regulations necessary and expedient for the appointment of trustees and their successors and all other officers and agents necessary for the future management of such Hospital shall be made by the present Board of Selectmen and shall be approved in writing by the executors of the will of the said W. B. Plunkett.  And to raise and appropriate such sum or sums of money as may be necessary for the maintenance and support of such

Hospital for the ensuing year." At an adjournment of this meeting the finance committee of the town reported in favor of the acceptance of the gift subject to the conditions mentioned in the article, and at that meeting it was voted " That the Town hereby takes the land, together with the Hospital erected and fully equipped thereon, known as the W. B. Plunkett Memorial Hospital, accepting the same as a gift to the Town by the late W. B. Plunkett, upon the agreement on the part of the legal representatives of the estate of said W. B. Plunkett to complete the grading upon said land in accordance with the plans and specifications already prepared for that purpose; subject to the condition that the same shall be used forever as a Hospital for the reception of persons during temporary sickness, and, also subject to the condition that such ordinances, rules and regulations necessary and expedient for the appointment of trustees and their successors and all other officers and agents necessary for the future management of said Hospital shall be made by the present Board of Selectmen and shall be approved in writing by the executors of the will of the said W. B. Plunkett."

Shortly thereafter one of the executors of Plunkett's will conferred with the selectmen of the town touching the organization of the managing board of the hospital, telling them that Plunkett considered it of the utmost importance that the management of the hospital be kept out of politics and that the gift was made upon condition that this board be chosen and vacancies therein filled in some other manner than by popular vote. In pursuance of the wishes thus expressed and in compliance with the conditions of the vote of the town already quoted, the board of selectmen in April, 1918, made and adopted ordinances, rules and regulations respecting the hospital and its management. After a recital that by the great beneficence " of a loyal and devoted life-long citizen of Adams, the late William B. Plunkett, the Town is the recipient of a beautiful Memorial Hospital surrounded

by spacious grounds and all fully equipped with modern appliances and already [all ready] for the reception and treatment of persons during temporary sickness, And in pursuance of the wishes of the donor and in compliance with the conditions of the vote of the Town referred to above," five "Ordinances Rules and Regulations" were adopted. The first set out the name of the hospital; the second provided that the management of the hospital should be in the hands of a board of seven trustees, seven residents of the town being therein named as creating and constituting "the present board"; the third was in these words: "Whenever the trustees above appointed shall for any cause become less than seven in number the remaining trustees shall cho[o]se by ballot some person or persons to fill the vacancy or vacancies until the said trustees shall be seven in number, and any vacancy thereafter occurring shall be filled by ballot by the remaining trustees. They shall always be residents of Adams and no trustee shall continue to hold his office after ceasing to be a resident of Adams"; the fourth vested the entire control of the hospital in the board of trustees; and the fifth provided that the trustees should make and submit a complete annual report to the town together with an account of all receipts and expenditures. These "Ordinances Rules and Regulations" were approved in writing by the executors of the will of Plunkett. The trustees appointed by the selectmen accepted their trust and made oath to the faithful performance of their duties. Five of them are still in office. Two vacancies since occurring in the board have been filled as provided in article third just quoted.

On June 22, 1918, the executors of the will of Plunkett conveyed to the town the real estate, together with the buildings thereon and all the equipment and appliances constituting the hospital property. The deed contained the following: "This conveyance is made subject to the condition that the premises described herein shall be used forever as a Hospital for the reception of

persons during temporary sickness and all the further conditions more particularly set forth in a vote of the Inhabitants of the Town of Adams, accepting the above-described property, which vote was passed on the 16th day of March, A. D. 1918 as appears by the record of the same in the Office of the Clerk of said Town of Adams." Appropriations have been made by the town for the support of the hospital varying from $14,000 in 1918 to $22,000 in 1930, the largest appropriation for any single year being $23,000 in 1929.

By St. 1930, c. 32, it was provided that the town of Adams "shall elect at a special town meeting . . . a board consisting of seven trustees to manage" the W. B. Plunkett Memorial Hospital, two to hold office for a term of one year, two for two years and three for three years, with provision upon the expiration of these terms for elections for a term of three years to fill these vacancies, and that "upon the qualification of the trustees so elected, the terms of office of all the trustees of said hospital then in office shall expire." Provision was further made that the act should become operative only upon its acceptance by the affirmative vote of the majority of the voters voting thereon in answer to a question to be printed on the official ballot for the annual town meeting in 1930. Pursuant to the terms of that act the vote was to accept the act, and in April, 1930, at a special town meeting held pursuant to said c. 32, the petitioners were elected as trustees to manage the hospital. At this special town meeting a representative of the board of trustees at that time attended and publicly read a protest based upon the conditions of the gift of the hospital, which was filed with the town clerk and recorded in the records of the meeting. Thereafter the plaintiffs, as the elected trustees under said c. 32, made demand upon the individual defendants as the preëxisting trustees to turn over the control of the hospital to them. That demand was refused. Thereafter they brought the present suit against the individual defendants (who will hereafter be called the

defendants) and the town of Adams. The town of Adams makes no contention concerning the merits of the controversy.

The question thus presented for decision is whether St. 1930, c. 32, is valid and binding upon the town of Adams and the defendants.

The facts narrated show that the completed hospital, including buildings and grounds, in June, 1918, was conveyed to the town of Adams in fee but upon the express conditions that it should forever be used as a hospital and that its control and management should be vested in a self-perpetuating board of trustees originally named by the selectmen of the town, all of whom should at all times be residents of the town. This method of selecting the original members of the board of trustees and of filling all vacancies therein from time to time occurring was an essential factor in the scheme of benefaction resulting in the gift of the hospital to the town. The gift in this particular is phrased, not in the form of a direction but of a condition. It would commonly be presumed that the town would not fail to the extent of its legal powers to carry out the wishes of the donors of such a gift. It may be assumed that, if a condition of such gift undertook to impose obligations which the town could not lawfully assume, it would be repugnant to the grant and void. *Drury* v. *Natick,* 10 Allen, 169, 183. It was said in *Cary Library* v. *Bliss,* 151 Mass. 364, 372–373, respecting a gift for the establishment of a library: "That part of the donor's scheme which relates to the management and control of the fund and of the library cannot be disregarded as unimportant. It prescribed the method of administering the charity which she thought best adapted to the accomplishment of her purpose. She chose to give her money to be used in that way. She did not authorize the use of it in any other way, unless for some reason it should become impracticable to pursue the course which she prescribed. It is fair to presume that, before founding this charity, she carefully considered the subject of its

administration." This part of the proposal was treated as an important element in the proposal and acceptance of the gift to the town.

It is therefore essential to examine the proposal, the vote of the town, the rules adopted by the selectmen and the terms of the conveyance by the executors, to determine whether they were in accordance with powers vested in the town and were binding upon the parties.

No discussion is required to demonstrate that in general a hospital like that here in question is a public charity which the town had a right to accept and administer. *Drury* v. *Natick,* 10 Allen, 169, 177–178, 182. *Burbank* v. *Burbank,* 152 Mass. 254. *Benton* v. *Boston City Hospital,* 140 Mass. 13. *Peirce* v. *Attorney General,* 234 Mass. 389. *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass. 66. It was provided by R. L. c. 81, § 25, as amended by St. 1915, c. 143, in force at the time of these occurrences in 1918, that " A city or town may purchase or take land, and erect, establish and maintain thereon a hospital for the reception of persons who require relief during temporary sickness. City councils and selectmen may make such ordinances, rules and regulations as they may consider expedient for the appointment of trustees and all other officers and agents necessary for managing such hospital." See now G. L. c. 40, § 5 (20). There was no requirement that such ordinances, rules and regulations be approved by any officer or body as a prerequisite to their validity. See R. L. c. 25, § 26; St. 1904, c. 344; G. L. c. 40, § 32. Thus the town had authority to accept the gift of the hospital and its selectmen were empowered to make rules respecting the selection of trustees to manage it.

The precise method of selecting the trustees to manage the hospital was not set forth either in the article in the warrant for the town meeting of March, 1918, or in the vote then adopted. But it is manifest from that article and vote that the subject of the appointment of such trustees was before the town and that action was taken on that point. The town apparently preferred that the

formulation of the exact terms of the rules to govern the
choosing of the trustees be left to that public board then in
office to whom in general that matter was delegated by
the statute. Whether that was the only method open to
the town need not be considered. The vote of the town
was that " the present Board of Selectmen " should specify
the plan for the appointment of the trustees " for the
future management " of the hospital and that that plan
when thus specified should be a " condition " of the deed
of gift after it had been approved in writing by the
executors of the will of Plunkett. Both the board of
selectmen and the executors of the will performed the
functions thus reposed in them and the gift was consum-
mated accordingly. The substance and effect of all these
transactions were to render the gift subject to the con-
dition that the managing board of the hospital was to be
selected in the future as well as at the outset in the way
thus agreed upon. The steps taken are as clear and
binding as if the whole matter had been set out in detail
in a proposal of gift and had been duly accepted with
extensive recitals in the vote and all embodied finally in
explicit words in the deed of gift. There can be no
mistake as to the intent of the parties. That intent was
expressed unequivocally. Since the whole transaction from
the point of view of the donors was wholly voluntary, they
had a right to make the gift upon such terms and con-
ditions as they desired within the limitations of the law.
The condition stated was within the power of the donor
as the basis upon which alone the gift would be made.
Its acceptance did not transcend the power of the town.
The transaction as a whole at the time it was undertaken
and consummated was in accordance with the law of public
charities and the enabling statutes. The donors of this
gift did not follow the example of the testator in *Ware* v.
*Fitchburg,* 200 Mass. 61, by leaving the whole matter
under municipal control according to laws from time to
time enacted, but they prescribed the particular method
by which the charity which they proposed to found should

be administered, as did the donor in *Cary Library* v. *Bliss,* 151 Mass. 364. See, also, *Trustees of Andover Seminary* v. *Visitors,* 253 Mass. 256.

There was nothing unreasonable about the plan adopted by the parties for selecting the trustees. It conformed in this particular to a special statute for the management of a municipal hospital which was considered in *Ware* v. *Fitchburg,* 200 Mass. 61. There is nothing at variance with this in *Attorney General* v. *Lowell,* 246 Mass. 312, 322, where a quite dissimilar point was presented for determination.

The trustees selected according to the plan of the gift do not constitute a corporation or a private instrumentality. They are to manage a public trust solely for the benefit of the public. While they are not specified by any statute governing municipal corporations as public officers, they perform duties strictly public. They stand on the same footing as many committees and boards of trustees selected by the municipalities for definite purposes. The authority of towns to choose special committees to perform municipal duties not vested by law in designated officers is beyond doubt. *Damon* v. *Granby,* 2 Pick. 345. *Haven* v. *Lowell,* 5 Met. 35. *Hunneman* v. *Grafton,* 10 Met. 454. *Adams* v. *Townsend Schoolhouse Building Committee,* 245 Mass. 543.

The question arises whether St. 1930, c. 32, providing a scheme of management for the hospital different from that established by the gift, is a valid exercise of legislative power. That question is answered in the negative by *Cary Library* v. *Bliss,* 151 Mass. 364, a case indistinguishable from the one at bar. The discussion of Mr. Justice Knowlton in that opinion is clear, comprehensive and decisive; nothing can be added to its cogent logic, its forceful reasoning, or its irresistible conclusion. It has been cited many times. Its authority has never been doubted. See, also, *Crawford* v. *Nies,* 224 Mass. 474, 478, 488. *Opinion of the Justices,* 237 Mass. 613, 617. The ground of that decision was that a completed gift for a public

charity duly accepted constituted a contract between the
donor and the donee even though the latter was a town,
the sanctity of which was under the protection of art. 1,
§ 10, of the Constitution of the United States, as inter-
preted by the Supreme Court of the nation. That article
provides that " No state shall . . . pass any . . . law im-
pairing the obligation of contracts." The extensive powers
of the General Court over the cities and towns of the
Commonwealth is not to be doubted. *Stone* v. *Charles-
town,* 114 Mass. 214. *Ware* v. *Fitchburg,* 200 Mass. 61,
67. *Higginson* v. *Treasurer & Schoolhouse Commissioners
of Boston,* 212 Mass. 583, 585. *Wright* v. *Walcott,* 238
Mass. 432. *Worcester* v. *Worcester Consolidated Street
Railway,* 196 U. S. 539. But it has limitations. *Mount
Hope Cemetery* v. *Boston,* 158 Mass. 509; *Opinion of the
Justices,* 234 Mass. 612, 619, and one of these limitations
is that it cannot invalidate a contract of a municipality
such as that disclosed on this record.

A main contention of the plaintiffs is that the situation
is changed by virtue of the Forty-sixth Amendment to the
Constitution of this Commonwealth, adopted subsequently
to those decisions, and that it is now no longer lawful to
appropriate public money to be expended by the defend-
ants as trustees. It is provided by that article, in § 2, so
far as here material: ". . . no grant, appropriation or use
of public money or property or loan of public credit shall be
made or authorized by the commonwealth or any political
division thereof for the purpose of founding, maintaining
or aiding . . . any . . . infirmary, hospital, institution . . .
which is not publicly owned and under the exclusive con-
trol, order and superintendence of public officers or public
agents authorized by the commonwealth or federal author-
ity or both, except that appropriations may be made . . .
to carry out legal obligations, if any, already entered into
. . ." This amendment was ratified and adopted by the
people on November 6, 1917, and by its § 5 did " not take
effect until the October first next succeeding its ratification
and adoption "; that is, to say, it took effect on October 1,
1918. It is to be observed that this amendment was not

effective at the time the gift here in question was completed in June, 1918. The gift with all its obligations and implications was therefore perfected before October 1, 1918, when the amendment became operative.

There are several answers to this contention of the plaintiffs. So far as the gift constituted a contract between the donors and the town, it could not be impaired even by an amendment or other change in the Constitution of this Commonwealth. It was said in *Opinion of the Justices,* 234 Mass. 597, at page 607, with the citation of numerous, supporting authorities, that "A State can no more violate a provision of the Constitution of the United States by its own Constitution than it can by the act of its legislative, executive or judicial authorities." To the same effect are *White* v. *Hart,* 13 Wall. 646, 652; *Florida* v. *Mellon,* 273 U. S. 12, 17; *Wisconsin* v. *Illinois,* 281 U. S. 179, 197.

Another answer to the contention of the plaintiffs is that continuance of the support of the hospital by taxation falls within the exception in § 2 of art. 46, which exempts from its inhibition appropriations to carry out legal obligations already assumed. The gift here in question carried with it an implication that it should be reasonably supported by the town. The conveyance to the town was upon the express condition that the property should be used forever as a hospital. Since no endowment accompanied the grant, the acceptance of the gift upon this condition imported an obligation to maintain and support the hospital at public expense so far as necessary. If the town is to retain title to the hospital, it must do something to make it useful as a public charity. That was an obligation arising out of the contract constituting the gift. It had already been entered into by the completion of the gift before the operative date of the Forty-sixth Amendment to the Constitution. Appropriation of public money to satisfy that obligation is, therefore, within the express permission of the amendment. The case of *Jenkins* v. *Andover,* 103 Mass. 94, is plainly distinguishable because the appropriation there in question was for the benefit

of a private corporation and not for the support of a publicly owned and operated charity.

Finally, we think that appropriations by the town from time to time for the support of this hospital are not within the prohibition of the amendment. This hospital is "publicly owned." The legal title to it is in the town. It is under the "exclusive control, order and superintendence" of the trustees prescribed by the terms of the gift. As already pointed out, these trustees constitute "public officers or public agents." They were selected in a way permitted by the statute governing the management of towns at the time of the gift. They act exclusively under their obligations to the public for the proper administration of their trust in accordance with the terms of the gift by which it was established, and with general public law to that end.

*Bill dismissed.*