THOMAS H. MAHONEY, JR., & others, trustees, *vs.*
ATTORNEY GENERAL & others.

Suffolk. November 8, 1963. — January 15, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Charity. Hospital. Devise and Legacy,* Gift for hospital. *Municipal Corporations,* Hospital, Charities, Contracts, Officers and agents. *Contract,* What constitutes, With municipality. *Constitutional Law,* Obligation of contracts, Expenditure of public money. *Trust,* Charitable trust. *Equity Jurisdiction,* Declaratory relief.

Acceptance by a town of a gift for the establishment and maintenance of a hospital therein as a public charity under a will vesting the sole care, control and management of the hospital in a board of trustees created a contract protected by the contract clause of art. 1, § 10, of the Federal Constitution. [713–714]

The terms of a gift in a will to a town, accepted by it, for the establishment and maintenance of a public hospital therein vested in a board of

trustees the sole care, control and maintenance of the hospital and so gave the board the right to prohibit or control an investigation at the hospital of its affairs by a committee established by the town for that purpose; but the town had the right to condition its appropriations for the hospital upon securing relevant information through such an investigation. [714–715]

A town had the right to make appropriations for a public hospital therein under the exclusive control of a board of trustees elected by the voters of the town. [714]

On the record of a suit in equity by the trustees in charge of a hospital in a town, established as a public charity by a testamentary gift accepted by the town, against the town and a committee thereof and the Attorney General seeking declaratory relief as to various matters relating to the hospital, no occasion appeared for a declaration respecting the power of the trustees to make certain conveyances of land already made by them. [715]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on March 20, 1962.

The suit was reserved and reported by *Spiegel,* J.

*John E. Rogerson* (*John S. Grace* with him) for the Trustees of the Leonard Morse Hospital.

*Francis E. Sullivan,* Town Counsel, for the Town of Natick & others.

*Edward W. Brooke,* Attorney General, & *James J. Kelleher,* Assistant Attorney General, for the Attorney General, submitted a brief.

REARDON, J. This bill for a declaratory decree was brought by the trustees of the Leonard Morse Hospital of Natick (trustees) against the Attorney General, the town of Natick (town) and the members of the Natick Hospital Needs Committee (committee). At issue are the questions (1) whether the town may appropriate money for hospital purposes to be expended by the trustees, (2) whether the trustees have authority to convey certain parcels of real estate, and (3) whether the committee has power to inspect records and facilities and interview employees of the hospital with a view to making recommendations on its operation and its need for additional facilities and personnel. The single justice reserved and reported the matter without decision on the bill, the amendment thereto, the answers of the defendants, the amendment thereto, and the stipulation of the parties.

Mary Ann Morse died in 1891 leaving the residue of her estate to ''the Inhabitants of Natick in their corporate capacity for the purpose of erecting, establishing and maintaining a hospital'' in Natick. The will provided that the hospital should be ''erected by and under the care, control and management of a Board of Trustees,'' all to be inhabitants of Natick, who were to establish rules and regulations for the institution, to be known as the Leonard Morse Hospital. The trustees were charged with the investment of funds remaining after the building of the hospital and the testatrix expressed confidence that the ''trustees . . . will at all times act with fidelity, discretion, and judgment, and for the best interest of all concerned in all matters pertaining to'' the trust. The annual town meeting of Natick in 1893 voted to accept the gifts under the terms of the will, and at the regular election for town officers held in the same year seven trustees were elected. Still later in that year the executors under the will transferred the residue of the estate of Mary Ann Morse to the trustees.[1] The trustees purchased an additional piece of land, upon which the hospital was built, and finally opened in 1899. It has been continually open since. Since 1893 at least one trustee has been elected each year at the annual election of town officers and has qualified by oath in the manner of a town officer. In each year since 1894 the hospital has submitted reports which have been included with the reports of other town officers. Until 1910 support for the hospital came largely from the fund left by Mary Ann Morse. Between 1910 and 1921 the town appropriated a total of $52,750 for such support. The town ceased its appropriations for the hospital in 1922, however, upon the receipt by the trustees of income from a trust left in the will of Samuel G. Chickering, amounting to a sum in excess of $19,000 annually. Special Statute 1916, c. 216, entitled, ''An Act to incorporate the Leonard Morse Hospital in the town of Natick,'' provided

[1] The trustees allege in their bill that twelve parcels of real estate passed to them under the will but the defendants, the town and the committee, deny that title to the twelve parcels passed to the trustees and rather allege that the town took title.

that the then elected trustees and their successors should be a corporation to "hold the property devised and bequeathed . . . by . . . Mary Ann Morse, and the proceeds thereof," to carry out the trusts upon which the same was given to the town, and also to have the power to hold other real and personal property not exceeding $300,000 in value. The act further provided that by vote of the directors "any part or the whole of the real or personal property" might be sold at public or private sale. No vote relating to the adoption or approval of the act of incorporation was ever taken by the town. Between 1901 and 1954 the trustees transferred for consideration seven of the twelve parcels of land which had come to them from the Morse estate, the first four allegedly under power conferred by the will, the others under powers given in Spec. St. 1916, c. 216. The passage of that act resulted in no change whatever in the election of trustees, in their management and control of the hospital, or in the reports they filed yearly. In 1935, the trustees joined in facilitating an application filed by the town for Federal funds to be employed in the construction of an addition to the hospital. A Federal grant in the sum of $60,750 was thus obtained, and the trustees provided $85,727.45, the remaining cost of the addition, from funds in their hands. The trustees controlled and managed the construction of this addition. Another addition was also constructed under the control and management of the trustees in the early 1950s from funds jointly allocated by the Federal government, the town and the trustees.

Pursuant to a town meeting vote in 1958 the town through its planning board contracted with a consulting firm relative to a long range plan for the growth and development of the town. A report from the firm in 1959 raised the question of whether the hospital should become "an entirely private institution." In the annual town meeting of 1959, $12,000 was appropriated to be expended by a committee appointed by the moderator in embarking on a study of expansion and repair for the hospital. Again in 1960, the consulting firm reported to the town planning board and

raised the question of the legality of appropriations by the town for the hospital and whether, if the hospital "is public," it is able "to independently manage and control its fiscal affairs." At a special town meeting held September 8, 1960, it was voted to establish a second committee designated as a "Hospital Needs Committee" to be appointed by the moderator to investigate the hospital needs of the town, the possibility of a regional hospital, and in addition to other items the "emergency admission needs and other aspects of the general question as may bear upon the future of the [hospital]." At a special town meeting on June 13, 1961, $9,000 was appropriated "for the purpose of employing hospital consultants to study the present and future needs of the . . . [hospital] and for any other expenses to be incurred in such a study, said money to be expended under the supervision of the Hospital Needs Committee . . . ." The committee claims the right by this vote to send its consultants into the hospital "to require pertinent information from [hospital] employees" and to recommend on the hospital operation and its needs as to facilities and personnel. The hospital consultant employed by the committee has been refused access to the hospital. The trustees take the position that the sole right to the care, control and management of the hospital is vested in them.

The parties seem to be agreed, and we concur, that the Leonard Morse Hospital is a public charity. The town of Natick was empowered to accept it under the provisions set forth in the Morse will. They placed the "care, control and management" in a board of trustees. The acceptance by the town of the benefaction bestowed upon it created contractual obligations which the town cannot now vary by action taken at town meetings. For "a completed gift for a public charity duly accepted . . . constitutes a contract between the donor and the donee even though the latter . . . [is] a town, the sanctity of which . . . [is] under the protection of art. 1, § 10, of the Constitution of the United States . . . . That article provides that 'No state shall . . . pass any . . . law impairing the obligation of con-

tracts.' " *Adams* v *Plunkett,* 274 Mass. 453, 462–463. *Cary Library* v. *Bliss,* 151 Mass. 364, 378. *Opinion of the Justices,* 237 Mass. 613, 617. *Salem* v. *Attorney Gen.* 344 Mass. 626, 631.

In Article Sixth of her will the testatrix stated: "I deem it inexpedient to attach any conditions to this gift or *to impose any unnecessary restrictions or limitations on the authority of the said trustees,* having full confidence that the town in which my husband and myself lived so many years, and for which we both cherished the greatest good will and affection will choose only suitable and proper persons to act as trustees and that the trustees so chosen will at all times act with fidelity, discretion, and judgment, and for the best interest of all concerned in all matters pertaining to said trust" (emphasis supplied). In accepting the gift of Mary Ann Morse the town impliedly agreed to abide by the provisions of her will relative to it. The language employed therein clearly evinces her intention that the trustees should have sole control of the hospital. That intention governs in the circumstances at issue, and we thus hold that the trustees alone have the power to prescribe and control the extent and time of any investigation at the hospital upon which the committee may embark. See *Cary Library* v. *Bliss,* 151 Mass. 364, 372–373.

This holding, however, constitutes no intimation that the town may not condition its financial aid to the hospital on adequate and reasonable investigation made in this instance on its behalf by the committee. The town has the unquestioned right to appropriate money for public hospital uses. And the Leonard Morse is a public hospital (as opposed to a "hospital . . . not publicly owned and under the exclusive control, order and superintendence of public officers" which may not be aided by public money [art. 46, § 2, of the Amendments to the Constitution of Massachusetts]). *Adams* v. *Plunkett,* 274 Mass. 453, 465. *Drury* v. *Natick,* 10 Allen, 169, 176. The town is fully entitled to satisfy itself that funds so appropriated will be expended wisely and well in the operation and expansion of the hospital. Nonethe-

less, the trustees have the power to control any such investigation at the hospital. We can do no more, after laying down the lines of responsibility than to urge upon the trustees and the committee resort to reasonable resolution of the difficulties existing between them in the light of the law as we have stated it.

We perceive no necessity for a declaration on the power of the trustees to make the conveyances which have taken place. Even if it be assumed, as contended by the town and the committee, that the portion of the 1916 statute relating to the trustees' power of sale is invalid, the power of conrol and management of the trustees is in no way abridged. Moreover, the declaratory judgment act (see G. L. c. 231A, § 1) provides that a binding declaration of right may be made "in any case in which an actual controversy has arisen and is specifically set forth in the pleadings." We know of no controversy or imminent litigation arising on the subject of these sales. We know of no pending or future sales. Furthermore, the Attorney General has sole standing under G. L. c. 12, § 8, to raise the issue of a possible breach of trust stemming from such sales. *Dillaway* v. *Burton,* 256 Mass. 568, 573. *Ames* v. *Attorney Gen.* 332 Mass. 246, 250–251. He has not raised that issue here with respect to sales after 1916. We decline to make a binding declaration on that portion of the bill dealing with sales of real estate by the trustees.

A final decree is to be entered declaring that the trustees have the power to limit or prohibit the investigation which the committee seeks to make in conjunction with the right of the town to appropriate money to the Leonard Morse Hospital, a public charity.

*So ordered.*