ATTORNEY GENERAL *vs.* GEORGE A. BRIGGS & others.

Bristol.     October 30, 1895. — November 27, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Devise and Legacy — Public Charity — Application of Doctrine of Cy pres — Trust — Equity.*

A devise in a will of a sum in trust, " as a fund forever," the income of which is to be appropriated for the support of a school in a certain school district in a town, the sum being in addition to the land and schoolhouse thereon already given to the district by the testator, creates a good public charitable bequest.

If it becomes impracticable to administer a bequest for the support of a school in a certain school district in a town precisely according to the terms of the will creating it, the charity is of such a kind that the testator's purpose must be carried out as nearly as possible in accordance with his design, even though the result reached differs in minor particulars from that intended.

The fact that the residue of an estate is given by will to a charity does not defeat the application of the doctrine of *cy pres* to another charitable bequest which it becomes impracticable to administer precisely according to the terms of the will.

The residuary clause of a will, which in another clause gives a sum to a public

charity, is to be considered only as other parts of the will are considered, to aid in ascertaining the general purpose of the testator in regard to the gift in question.

Where it has been found impracticable to administer the gift in a will of the income of a fund for the support of a school in a certain school district in a town precisely according to the terms of the will, even if the benefits from the fund shall be shared by all the inhabitants of the town, it will not be extending the effect of the gift beyond the proper scope of the doctrine of *cy pres* in its application to such a case; and, if it is plainly within the testator's general intent that the town as a whole shall share his bounty, if it cannot otherwise be made available by those residing in the district specified, this court will frame a scheme for applying the income of the fund to educational purposes for the benefit of persons living within the territory which was formerly such district, and in that vicinity, and of such other persons in the town as in the exercise of their legal rights may incidentally derive advantage from it.

INFORMATION IN EQUITY, filed June 2, 1891, at the relation of the inhabitants of Fairhaven, against George A. Briggs, trustee of a fund created by the will of Abner Pease, deceased, the heirs and next of kin of said Pease, and the Male Overseers of the New Bedford Monthly Meeting of Friends, a corporation, praying that the court would declare and establish the trust created by the will to be a public charity, and to decree its enforcement; and that, if the trust could not be specifically carried out according to the directions of the will, the same might be decreed to be executed as nearly as possible to the intent of the testator, by appropriating the income of the trust fund for certain specified purposes, or that the case might be referred to a master to report a scheme for the administration of the trust as nearly as possible to the intent of the testator. The case was referred to a master, who found and reported the following facts.

Abner Pease died on December 23, 1852, leaving a will dated January 18, 1847, which was duly proved and allowed, and which contained, among other provisions, the following clauses:

" I give the use and improvement of the remainder of said farm to the school committee of said town of Rochester and successors in that office, in trust for the benefit and use of the two school districts in said Rochester, generally known by the names of Aucute and Pine Island districts, to be divided between said districts as follows." Then follows a description of the boundaries.

" After the decease of my wife, or when she ceases to be my

widow, I give to my said executors during their lives, or the life of the survivor, and after their decease, or should they decline the trust, to the selectmen of Fairhaven in trust, and to their successors in that office, as a fund forever, five thousand dollars, the income of which to be appropriated for the purpose of supporting a school in school district No. 19 in said Fairhaven, called the Pease District. This sum is in addition to a lot of land and schoolhouse thereon which I have already given said district.

" I give, after the decease of my said wife, or when she ceases to be my widow, to the overseers of the Long Plain Friends ' Preparatory ' Meeting, and their successors in that office, in trust forever, the remainder of my personal estate not otherwise disposed of; the income of which to be appropriated for the benefit of the Friends Meeting in said Fairhaven and Rochester."

Mercy Pease, the testator's wife, died on May 22, 1860.

On June 25, 1863, the executors having declined the trust, George H. Taber, Jonathan Cowen, and Bartholomew Taber of Fairhaven, at that time selectmen of the town, were duly appointed by the Probate Court, and gave bonds and entered upon the duties of their office. George H. Taber resigned his trust on March 19, 1880, and Bartholomew Taber and Jonathan Cowen resigned their trusts in September, 1880, and George A. Briggs of Fairhaven was duly appointed the trustee on January 23, 1882, gave bond, and entered upon the duties of his office, and still continues to be the trustee of the fund.

School District No. 19, afterwards commonly called the Pease District, was established by vote of the town of Fairhaven in 1838, at the special request of Abner Pease, who carefully defined its limits. It comprised about twenty-five acres in a nearly triangular shape, bounded north by Bridge Street, which runs directly east from the New Bedford and Fairhaven Bridge, or rather by a line running just far enough north of Bridge Street to include all the houses standing on that street, west by the harbor, and southeast by Herring River, which runs southwesterly across the line of Bridge Street into the harbor.

The first meeting of the district for organization was held on April 16, 1838. On the same day Pease gave to the inhabitants of the district a deed of a lot near the centre of the district, with a schoolhouse upon it already erected by him.

From that time until his death Pease took an active interest in the affairs of the district, was at times on its prudential committee, and was one of the committee having charge of the enlarging of the building in 1847 or 1848.

In 1869, the school district system in the Commonwealth was abolished by general law. The town of Fairhaven never after that re-established the system under the authority of any subsequent legislation.

School was kept in the district, and in the house given to the district by Pease, from the organization of the district in 1838 until the year 1885. There never has been any other schoolhouse within that district. From the beginning and until the fund provided by Pease in his will became available, the school was maintained by the district in the ordinary manner of a district school. After this fund became available, its income was applied towards supporting the school, the balance necessary for the purpose being paid from the town appropriations as before. From 1855 to 1869 inclusive, the average amount received annually from the town towards the support of the school was $237, and during those years the average attendance of scholars was forty-eight. From the abolishing of the school district system in 1869 until the year 1885, the town, by agreement with the trustee, paid one half the current expenses of the school. During that time the average attendance was twenty-six.

In 1885 the town accepted as a gift from Henry H. Rogers an elegant new brick schoolhouse located in a very desirable spot near the centre of the town. This school building is intended and designed for the accommodation of all the scholars in town except those in the rural districts. It will comfortably accommodate 400 pupils. The average number of scholars on the rolls since it was opened has been about 320. The number is not any larger than that at the present time. This is called the Rogers School. It is 3,300 feet distant from the centre of the Pease District. The Rogers School is a graded school, and has every facility for employing the most improved methods in common school instruction; a large proportion of the school children in the town attend this school. Four rural schools from one to three miles away are still maintained. These have an average attendance of twenty-five to thirty scholars.

In 1885, as soon as the Rogers School was opened, the school committee of the town proposed to remove to this school the scholars in the Pease District. At a meeting of the inhabitants of the district, called to consider this proposition, at which fifteen or twenty persons were present, the proposition was approved. The scholars were removed to the Rogers School, and have been there ever since. No dissatisfaction with this arrangement has ever manifested itself. There are now twenty-five school children living within the limits of the old Pease District, in ten or twelve families.

Since 1885, the trustee has not used the income of the fund for any school purpose, but has allowed it to accumulate until the principal and interest now amount to about $8,000.

Since the school has been transferred to the Rogers School, the heirs of Abner Pease have brought a writ of entry and recovered the schoolhouse and lot, by reason of a breach of a condition in the deed requiring that the schoolhouse should be kept and maintained by the inhabitants of the district for the use of a school. Judgment in this suit was obtained by default, the inhabitants of the district, though summoned, making no appearance.

" In the present condition of things I have no doubt it is impracticable to establish and support such a school, and I so find. If the children had no other chance for instruction, I have no doubt it would be both possible and practicable to use the income of this fund within the district in such a way as to be of considerable benefit to them.

" But under the present circumstances, with the town ready to give them good instruction through thirty-eight or forty weeks in the year, and with an excellent school within easy reach, which they are expected to attend, and which they are now attending with perfect satisfaction, to use the income of this fund to maintain a separate school in the old Pease District for the twenty-five scholars in that district would be worse than a waste of money.

" Some of my reasons for this opinion are these : 1. The whole territory within this district lies flat and low. It is not an inviting locality for a school. 2. The probable expense of supporting in the district, outside of the cost of a school build-

ing, would be $350 a year; with the present income of the fund it is not probable that a school could be maintained for more than one half of the usual school year. 3. Such a school must necessarily be a mixed school, with all the grades of scholars under one teacher. With the Rogers School open to them, I do not believe any scholars would attend this school unless they were compelled to do so.

" It was suggested by the counsel for the trustee that the trustee might properly and profitably spend the income in providing some kind of instruction which does not come within the usual course of common school instruction, or which at least does not embrace the whole of such instruction, as, for instance, in a drawing school, or writing school, or school for manual training, or an evening school of some sort.

" If such a disposition of the money would come within the intention of the testator, I think the fact that for these last nine years the trustee has made no attempt to spend the money in this way is good evidence that he has not found it advisable or practicable so to spend it; and I think in this matter he has shown good judgment. There was no evidence before me that there was any field for such instruction among the inhabitants of this district which would justify the use of the income in that way.

" The only other plan for using this fund suggested by the trustee was to hold it, either till the town should build a school-house in the district and assist the trustee to support a school there, or until the fund should accumulate to such an amount as to be sufficient to support a school without assistance from the town. The trustee frankly stated that he did not expect to see either of these events happen during his lifetime.

" There are now about 175 inhabitants in the Pease District. The territory is already pretty well covered with houses, and it is not likely that the population will greatly increase for many years to come."

In regard to the contention in this case of the Male Overseers of the New Bedford Monthly Meeting of Friends, that, the particular legacy for a charitable purpose having failed, it should fall into the residuum of the testator's personal estate, which also creates a valid charity, this residuary clause was passed

upon by the Supreme Judicial Court in the case of *Dexter* v. *Gardner*, 7 Allen, 243. Ever since that decision was given, and until the present time, the income of the residuary fund has been expended conformably to the terms of the decision. While the Overseers of the New Bedford Monthly Meeting expend some of the income of this fund for charitable purposes other than educational, they expend a fair share of it for the education of children within the particular meetings comprising the Long Plain Preparative Meeting.

Hearing upon the information and answers, the master's report and exceptions thereto, before *Morton*, J., who reserved the case for the consideration of the full court; such disposition to be made as law and justice might require.

*E. L. Barney*, for the trustee.

*G. F. Tucker*, for the Male Overseers of the New Bedford Monthly Meeting of Friends.

*A. E. Perry*, for the heirs at law of the testator, submitted the case on a brief.

*W. Clifford & A. B. Collins*, for the Attorney General.

KNOWLTON, J. The will of Abner Pease contains a provision as follows : " After the decease of my wife, or when she ceases to be my widow, I give to my said executors during their lives, or the life of the survivor, and after their decease, or should they decline the trust, to the selectmen of Fairhaven in trust, and to their successors in that office, as a fund forever, five thousand dollars, the income of which to be appropriated for the purpose of supporting a school in school district No. 19 in said Fairhaven, called the Pease District. This sum is in addition to a lot of land and schoolhouse thereon which I have already given said district." It is too clear for discussion that this creates a good public charitable bequest, to the administration of which this court will give all necessary aid. *Boxford Religious Society* v. *Harriman*, 125 Mass. 321. *Sears* v. *Chapman*, 158 Mass. 400. *Russell* v. *Allen*, 107 U. S. 163.

The schoolhouse referred to and the lot of land on which it stands have been recovered from the district by the heirs at law of Abner Pease, under a writ of entry brought on account of a breach in a condition in the deed of gift which required that the schoolhouse should be kept and maintained by the inhabitants

568      ATTORNEY GENERAL *v.* BRIGGS.      [164

of the district for the use of a school. It is found by the master, for satisfactory reasons which are stated in his report, that it is impracticable to use the fund in question for the maintenance of a school in this district, and thus a case is presented in which the purpose of a testator cannot be accomplished in the manner prescribed. The question arises whether the charity must altogether fail, or whether it is a case for the application of the doctrine of *cy pres*, whereby the general purpose of the testator may be carried out in a way differing from that which he contemplated. He meant to have the money used in the support of a school in school district No. 19 for the benefit of that part of the public who might from time to time reside within the district, or so near it as to use the school established there. He had an interest in the education of children, and particularly in the education of children residing in that district. But we should undoubtedly do him injustice if we should interpret his purpose so narrowly as to make the continuance of the charity depend upon the maintenance of a school within the limits of the district, the entire area of which was only about twenty-five acres. When he made his will he thought the continuance of a school there was the best way of promoting education in that vicinity. The promotion of education in that neighborhood was his object, and the charity is of such a kind that his general purpose must be carried out as nearly as possible in accordance with his design, even though the result reached differs in minor particulars from that intended. *Jackson* v. *Phillips*, 14 Allen, 539. *Weeks* v. *Hobson*, 150 Mass. 377. *Sears* v. *Chapman*, 158 Mass. 400. *Attorney General* v. *Glyn*, 12 Sim. 84. *Biscoe* v. *Jackson*, 35 Ch. D. 460. *Birchard* v. *Scott*, 39 Conn. 63.

It is contended in behalf of the residuary legatees, that inasmuch as the bequest cannot be used exactly as provided by the will, and as the residue is given to a charity, it should be held that this bequest has failed, and that the fund should go to them for the charitable uses mentioned in the residuary clause. But the fact that the residue is given to a charity does not defeat the application of the doctrine of *cy pres* to another charitable bequest which it becomes impracticable to administer precisely according to the terms of the will. This rule is established by the highest authority in England, and it is founded upon the

same principles of interpretation as the general doctrine of *cy·pres* itself. The residuary clause is to be considered only as other parts of the will are considered, to aid in ascertaining the general purpose of the testator in regard to the gift in question. *Ironmongers' Co.* v. *Attorney General*, 10 Cl. & Fin. 908. *Mayor of Lyons* v. *Advocate General of Bengal*, 1 App. Cas. 91.

Upon the facts found by the master it is the duty of the court to frame a scheme which shall accomplish the general purpose of the testator as nearly as possible according to the terms prescribed by his will. It may be difficult, if not impracticable, to use the income of the fund in such a way as to give the inhabitants of the territory which was formerly school district No. 19 any greater benefits from it than others have who are accommodated by the Rogers School; but even if the benefits from it should be shared by all the inhabitants of the town it would not be extending the effect of the gift beyond the proper scope of the doctrine of *cy pres* in its application to a case of this kind. If the gift could be administered precisely as the testator intended, its principal effect would be to relieve the inhabitants of the district from an expenditure which they would otherwise be obliged to make in the performance of their public duties. After the abolition of the school districts under the St. of 1869, c. 110, until the school was discontinued upon the opening of the Rogers School in 1885, the school in the district was maintained by the town, and the practical effect of the gift was merely to relieve the town from taxation yearly to the amount of the annual income of the fund. In another part of his will the testator has given property to two other school districts in the town of Rochester, the benefit of which since the abolition of the school districts has been enjoyed by all the inhabitants of that town. It was plainly within his general intent that the town of Fairhaven as a whole should share his bounty if it could not otherwise be made available by those residing in district No. 19.

Upon the facts found by the master it seems that the income of the fund should be applied in some way towards the support of the Rogers School, or used in furnishing instruction of some kind in connection with that school. The case must be further heard by a single justice, who will frame a scheme, either with or without the aid of a master, for applying the income of the

fund to educational purposes for the benefit of persons living within the territory which was formerly school district No. 19, and in that vicinity, and of such other persons in the town as in the exercise of their legal rights may incidentally derive advantage from it.                                    *So ordered.*