FREDERICK D. ELY & others, trustees, vs. ATTORNEY
GENERAL & others.

Norfolk.    May 17, 1909. — June 23, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Charity*, General charitable purpose, Administration *cy pres.*

The will of a testatrix contained the following residuary clause : " The residue of
my estate, real and personal, I give, bequeath and devise, for the purpose of
founding a Kindergarten Home for Deaf Children, to be located on the old es-
tate owned by me — to be founded strictly on the family system, the object
being to prepare a limited number of young children to enter under favorable
circumstances, those institutions where the deaf are taught to speak by lip
movements." The " old estate " referred to was the place in the town of Welles-
ley in which the testatrix had lived all her life. After her death the main
part of the house was injured by fire so as to be uninhabitable, and it would cost
$4,000 or $5,000, if not more, to make it fit for occupancy as a kindergarten for
deaf children. Besides the " old estate," the residue left to the trust amounted
to about $20,000, and, after such an expendituré as would be necessary to put
the estate in a proper condition for use, the balance in the hands of the trustees
would not be enough to maintain the institution for any considerable length of
time. Upon a bill for instructions filed by the trustees under the will, a single
justice found that it was " altogether problematical and uncertain how much
money would be required and how long it would take to accumulate the
necessary funds." The single justice also found that the Sarah Fuller Home
for Little Deaf Children was situated in West Medford, about fourteen or
fifteen miles from Wellesley ; that it had been established about twenty
years and that its objects and principles were the same in all respects as those
which the testatrix had in mind in founding a Kindergarten Home on her
estate in Wellesley ; that it took a limited number of children and adopted the
family system. He found also that the testatrix was familiar with and in-
terested in its work and that her purpose in founding a Kindergarten Home
on her estate was to have the same sort of work done there as was done in
the institution at West Medford. The executive committee of the Sarah
Fuller Home had expressed by vote a willingness to take over the fund in
the hands of the petitioning trustees and the proceeds of the real estate that
might be sold, and to administer in connection with the Home the charity
created by the testatrix. The Sarah Fuller Home was the only institution of
the kind in the Commonwealth. *Held*, that the trustees should not be in-
structed to hold the fund for accumulation ; that, since the founding of a new
home was impracticable for lack of money to maintain it, it was within the
general intent of the testatrix to apply the gift to the support and maintenance
of such children in another home, furnishing the same advantages, in a place
so near as to accommodate the same class of persons, and it was ordered that

the charity should be administered in accordance with the doctrine of *cy pres,* through the Sarah Fuller Home, under a scheme to be approved by a single justice.

KNOWLTON, C. J.    This is a bill for instructions,* by trustees appointed under the will of Charlotte Kingsbury, late of Wellesley, deceased.   The questions arise under the residuary clause of her will, which is as follows :  " The residue of my estate, real and personal, I give, bequeath and devise for the purpose of founding a Kindergarten Home for Deaf Children, to be located on the old estate owned by me,— to be founded strictly on the family system, the object being to prepare a limited number of young children to enter under favorable circumstances, those institutions where the deaf are taught to speak by lip movements."    The " old estate " referred to is the place in which she resided all her life. The single justice has found that, so far as the question is one of fact, " it is not at present practicable to locate on the old estate the Kindergarten Home for Deaf Children which the testatrix desired to found there."    This is because of the insufficiency of the property provided for the purpose.   Through injury to the house by fire, since the death of the testatrix, the main part of it has become uninhabitable, and it would cost $4,000 or $5,000, if not more, to make it fit for occupancy as a kindergarten home for deaf children.    Besides the old estate itself, the trustees have property amounting only to $20,138.15, applicable to this charitable use.   After such expenditure as would be necessary to put the estate in a proper condition for use, the balance in the hands of the trustees would not be enough to maintain the institution for any considerable time.

The first question upon which there can be any doubt is whether, with a view to carry out the purpose of the testatrix as nearly as possible, the property should be held by the trustees and allowed to accumulate until it is sufficient to justify the founding of the home.   The justice found that " it is altogether problematical and uncertain how much money would be required and how long it would take to accumulate the necessary funds."    Upon this finding, taken in connection with the other

* Filed in the Supreme Judicial Court on September 6, 1907.    The case was heard by *Morton,* J., who, with the consent of the parties, reported it for determination by the full court.

facts disclosed, we are of opinion that the trustees should not be instructed to hold the fund for accumulation, in the hope that some time, in the more or less distant future, they would be able to carry out literally the purpose of the testatrix, which evidently was intended to be executed in a short time after her death.

The heirs at law contend that the charity has failed altogether, and that the property should pass to them as the legal representatives of the testatrix. The question thus raised is whether she had a general charitable intention to aid a particular class of unfortunate persons in a home of the kind referred to, or whether her only purpose was to found and maintain a new home for deaf children on her old estate. Looking at the language of the will, it seems to have been her purpose to provide for these children the advantages of a home of the kind referred to, and that this intention was paramount in her thought. As was held in *Weeks* v. *Hobson*, 150 Mass. 377, the exact location provided for in the will does not seem to have been so important a consideration in her thought as the existence and maintenance of a conveniently located home. Nor is the class to be benefited limited to children residing in her own town or neighborhood. The number of persons needing the advantages of such a home is so small that she naturally would expect its inmates to come from a considerably large territory. Since the founding of a new home is impracticable for lack of money to maintain it, we think it is within her general intent to apply the gift to the support and maintenance of such children in another home, furnishing the same advantages, in a place so near as to accommodate the same class of persons. The finding of the single justice in regard to another institution, in which the testatrix was interested, is important in its bearing upon her general purpose in reference to conditions now existing, when the principal scheme which she had in mind is impossible of execution. This finding is as follows: " The Sarah Fuller Home for Little Deaf Children is located in West Medford, which is about fourteen or fifteen miles from Wellesley. It has been established about twenty years, and its objects and principles are the same in all respects as those which the testatrix had in mind in founding a kindergarten home on her estate in Wellesley. It takes a limited number of children and adopts

the family system. The testatrix was familiar with and interested in its work. I find that her purpose in founding a kindergarten home on her estate was to have the same sort of work done there as was done in the institution at West Medford. Beyond carrying out the wish of the testatrix, no particular advantage would be gained by having the home located in Wellesley instead of having the charity administered by the Sarah Fuller Home in West Medford. The children in the Sarah Fuller Home come from surrounding towns, and in some cases from other States, and that would be the case if the home contemplated by the testatrix in Wellesley was established. The executive committee of the Sarah Fuller Home have by vote expressed a willingness to take over the fund in the hands of the petitioning trustees and the proceeds of the real estate that may be sold, and to administer in connection with the home the charity created by the testatrix. The Sarah Fuller Home is the only institution of the kind in this Commonwealth, and I am of opinion, and so find, that if the doctrine of *cy pres* is to be applied a scheme for administering the charity through the Sarah Fuller Home should be approved." We are of opinion that the case comes within the doctrine stated and applied in *Weeks* v. *Hobson, ubi supra, Codman* v. *Brigham,* 187 Mass. 309, 313, *Darcy* v. *Kelley,* 153 Mass. 433, *Attorney General* v. *Briggs,* 164 Mass. 561, *Sherman* v. *Congregational Home Missionary Society,* 176 Mass. 349, *Amory* v. *Attorney General,* 179 Mass. 89, *Boston* v. *Doyle,* 184 Mass. 373, *Osgood* v. *Rogers,* 186 Mass. 238, and *Richardson* v. *Mullery,* 200 Mass. 247.

It is to be distinguished from *Stratton* v. *Physio-Medical College,* 149 Mass. 505, *Bullard* v. *Shirley,* 153 Mass. 559, *Teele* v. *Bishop of Derry,* 168 Mass. 341, *Gill* v. *Attorney General,* 197 Mass. 232, and *Bowden* v. *Brown,* 200 Mass. 269.

The charity is to be administered in accordance with the doctrine of *cy pres,* through the Sarah Fuller Home, under a scheme to be approved by a single justice.

*So ordered.*

The case was submitted on briefs.

*D. Malone,* Attorney General, *& F. T. Field,* Assistant Attorney General, for the Attorney General.

*W. F. Connor,* for Martha J. Lovewell.