## TOWN OF MILTON *vs.* ATTORNEY GENERAL.

Norfolk.   April 4, 1940. — June 29, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Charity. Municipal Corporations,* Contracts, Charitable gift. *Contract,* With municipality, Charity. *Milton. Hospital. Constitutional Law,* Expenditure of public money. *Equity Jurisdiction,* Charity.

The town of Milton, by accepting a gift under a will "for the purpose of establishing and maintaining" a hospital and by accepting Spec. St. 1917, c. 305, § 2, authorizing it to appropriate money for such purposes, did not become bound to supply from its own funds whatever might be necessary for such purposes in addition to the gift.

A gift in a will to the town of Milton, in which there was no hospital at the time of the testator's death, "for the purpose of establishing and maintaining" a hospital in the town under such regulations and management as the town might adopt, without any gift over in case such application of the gift should be impracticable, showed a general charitable intent of the testator permitting the application of the doctrine of cy pres upon its appearing that the application stated in the will was impracticable.

Acceptance by the town of Milton in 1916 of a testamentary charitable gift of such a character as to permit its application cy pres created a contract one term of which was that the gift should be so applied if that course should become desirable; and application of the gift cy pres by turning the funds over to a private hospital would not violate the provisions of art. 46 of the Amendments to the Constitution, not effective until 1918, prohibiting the use of public money for the purposes of any hospital not publicly owned and controlled, "except that appropriations may be made . . . to carry out legal obligations . . . already entered into."

The doctrine of cy pres should be applied in the case of a gift in a will to the town of Milton "for the purpose of establishing and maintaining a hospital" therein under such management as the town might adopt, where it appeared many years after the testator's death that the fund created by the gift was insufficient for the specified purposes, that it was problematical how long a time would be required to accumulate the additional funds necessary, and that the establishment of a hospital as provided in the will would result in a duplication of an existing incorporated general hospital which had been established in the town after the testator's death and which, if provided with funds for certain improvements, would be sufficient for the town's needs; and a scheme should be framed for consolidation of the fund created by the gift with the funds of the existing hospital and its application as nearly in accordance with the testator's charitable intent as possible.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Norfolk on June 10, 1939.

The suit was reserved by *Donahue,* J., for determination by the full court.

*R. G. Dodge,* (*L. Bryant & T. Chase* with him,) for the plaintiff.

*P. A. Dever,* Attorney General, *& E. McPartlin,* Assistant Attorney General, for the Attorney General, submitted a brief.

LUMMUS, J.  By the will of Edwin D. Wadsworth late of Milton, dated May 29, 1899, and admitted to probate on March 27, 1901, the testator left the residue of his estate, after the deaths of his wife and children without issue of the children, to "the town of Milton, aforesaid, for the purpose of establishing and maintaining a Public Hospital within said town, to be under such regulations and board of management as said town may, from time to time, adopt and establish."  Apparently the wife had died, and the children had died without issue, as early as 1915, for in that year the residue, called the Wadsworth Fund, amounting to $61,766.63, was turned over to the town, and on March 4, 1916, the gift was formally accepted by the town. The fund amounted in November, 1939, to approximately $195,000.  It is now in the hands of a board of trustees elected under Spec. St. 1917, c. 305.

When the testator died there was no hospital in Milton. In 1903 a public charitable corporation, now called Milton Hospital and Convalescent Home, was incorporated.  By Spec. St. 1916, c. 46, its purpose was enlarged to "include the furnishing of medical and surgical aid and other service of a similar character to persons of both sexes, adults, children and infants, and the establishment and maintenance of a hospital, convalescent home, out-patient department, dispensary, ambulance service and any other department or service of a similar nature."  For a long time it has maintained, and still maintains, a public hospital in Milton.

The existing hospital is "reasonably well equipped and efficient," except that its capacity is only twenty-six beds instead of the forty beds needed, and that the hospital is

in a rather old wooden building. The population of the town is between eighteen thousand and nineteen thousand. There is need of a new hospital building large enough to contain forty beds. With such a hospital, there would be no need of another.

The cost of such a new hospital building, apart from the site, would be about $207,600. There would probably be an annual operating deficit of about $15,000 for one such hospital. With two hospitals to divide the receipts the operating deficit would be materially increased. For some years the town has spent on an average about $3,000 a year for hospitalization, apparently under § 3 of Amendment 46 to the Constitution of Massachusetts. Every $1,800 of operating deficit would require an addition of five cents to the tax rate.

Both the town of Milton and the Milton Hospital and Convalescent Home desire that the Wadsworth Fund be turned over to the Milton Hospital and Convalescent Home under an arrangement by which it will use the fund in building a new hospital for forty beds, and will supply whatever additional money may be necessary, and will assume the maintenance of the hospital for both charity and paying patients. If this arrangement is made, a site for the hospital will be supplied without cost. The Milton Hospital and Convalescent Home will move to the new building, furnishing any necessary additional equipment, and will use its old building as a nurses' home. The Milton Hospital and Convalescent Home is financially able to supply the necessary funds, and will then have an income from its invested funds of about $9,000 to meet operating deficits. Besides, it will have bright expectations of raising by subscription among the inhabitants of the town, many of whom are wealthy, such additional funds as may be necessary to meet any operating deficit.

By St. 1931, c. 317, the town was authorized to "dispose of and use the funds and property received by said town under the will of Edwin D. Wadsworth . . . for such other purposes, in such manner and upon such terms and conditions as may be authorized by the decree of a court of com-

petent jurisdiction upon a bill in equity for instructions or other appropriate proceeding brought by said town." Accordingly this bill was filed on June 10, 1939, setting forth that the fund is inadequate to establish and maintain a public hospital, that the town cannot augment the fund sufficiently within any reasonable time, and that the town has voted to authorize proceedings for the application of the fund cy pres by payment to the Milton Hospital and Convalescent Home for the erection and equipment of a new hospital building. The Attorney General appeared and answered, contending that there is need of additional hospital facilities in Milton, but that the town is bound to furnish the necessary funds and to use the funds on hand strictly in accord with the provisions of the will.

The Attorney General contends that by accepting the gift the town became bound to supply from its own funds all the money needed, in addition to the Wadsworth Fund, to build, equip and maintain the hospital according to the literal provisions of the will. He cites *Adams* v. *Plunkett*, 274 Mass. 453; but in that case no fund for maintenance was given. This court said (page 464), "The conveyance to the town was upon the express condition that the property should be used forever as a hospital. Since no endowment accompanied the grant, the acceptance of the gift upon this condition imported an obligation to maintain and support the hospital at public expense so far as necessary." In the case at bar, however, the gift was for the purpose of maintaining as well as establishing a public hospital. The acceptance of the gift imported no contract to make up its deficiencies. Cases in other jurisdictions where a donee was held to make such a contract depended upon express provisions to that effect. *Seibold* v. *Naperville*, 19 Fed. Sup. 281. *Woman's Hospital League* v. *Paducah*, 188 Ky. 604. *Alumnae Association of William Penn High School for Girls* v. *University of Pennsylvania*, 306 Penn. St. 283. In *Bowden* v. *Brown*, 200 Mass. 269, the gift was to a town "toward the erection of a building that should be for the sick and poor," and it was intimated that if the town had accepted the gift, which was manifestly insufficient to erect and main-

tain the building, it would have had to supply any deficiency. Here the will does not contemplate any contribution by the town or anyone else. It is true that Spec. St. 1917, c. 305, § 2, which was accepted by the town, says that "The town may appropriate and raise money for the establishment, support or maintenance of the hospital"; but that provision implies that the mere acceptance of the gift did not bind it to do so.

In *Sanderson* v. *White*, 18 Pick. 328, 333, Chief Justice Shaw said: "In case of a gift to charitable uses, . . . where a literal execution may become impracticable or inexpedient, in part or even in whole, it will be carried into effect so as to accomplish the general purpose of the donor, as nearly as circumstances will permit, and as such general charitable intent can be ascertained." This is quoted with approval in *Judkins* v. *Hyannis Public Library Association*, 302 Mass. 425, 427. See Scott, Trusts (1939) § 399. As in *Ely* v. *Attorney General*, 202 Mass. 545, it is altogether problematical and uncertain how long it would take to accumulate the necessary funds to build and maintain the required hospital. Even if the fund should be so accumulated, ignoring the existence of the Milton Hospital and Convalescent Home, a waste of charitable facilities would result through the co-existence of two hospitals, one of which would be unnecessary. *Attorney General* v. *Briggs*, 164 Mass. 561. The fund should not be held for accumulation in the hope that some time, in the more or less distant future, the purpose of the testator could be carried out literally. *Ely* v. *Attorney General*, 202 Mass. 545, 547. *Grimke* v. *Attorney General*, 206 Mass. 49, 51. *Norris* v. *Loomis*, 215 Mass. 344, 347.

Since it is impracticable to carry out literally the terms of the gift, the question comes, whether there was a general charitable intent, permitting the application of the doctrine of cy pres. When the testator made his will, and when he died, there was no hospital in Milton. His paramount purpose was that one be established and maintained. All else appears to have been secondary. There is nothing in his will to show that he desired his gift to be used without regard to future hospital facilities in Milton. *Weeks* v. *Hob-*

*son,* 150 Mass. 377. In a number of cases the application of the fund to the particular purposes stated by the donor has been deemed impracticable, and the fund has been applied cy pres, because a duplication of facilities would otherwise result. *Attorney General* v. *Briggs,* 164 Mass. 561. *Keene* v. *Eastman,* 75 N. H. 191. *Adams* v. *Page,* 76 N. H. 96. *Matter of Neher,* 279 N. Y. 370. The failure of the testator to make a gift over in the event that his specified purposes should prove impracticable is some indication of a general charitable intent. *Bragg* v. *Litchfield,* 212 Mass. 148, 151. There is nothing to show that the testator regarded it as of the essence of his design that the town should continue to be trustee. Ordinarily the application of the funds to charity is the dominant object, and the trustee is only a means to that end. *Minot* v. *Baker,* 147 Mass. 348, 349. *Codman* v. *Brigham,* 187 Mass. 309, 313, 314. *Richardson* v. *Mullery,* 200 Mass. 247. *Chase* v. *Dickey,* 212 Mass. 555, 567. Scott, Trusts (1939) § 397.

The Attorney General contends that if the fund should be turned over to a private corporation like Milton Hospital and Convalescent Home there would be a violation of Amendment 46 to the Massachusetts Constitution. That amendment provides that "no grant, appropriation or use of public money or property or loan of public credit shall be made or authorized by the commonwealth or any political division thereof for the purpose of founding, maintaining or aiding any . . . hospital . . . which is not publicly owned and under the exclusive control, order and superintendence of public officers or public agents authorized by the commonwealth or federal authority or both, except that appropriations may be made . . . to carry out legal obligations, if any, already entered into." This amendment was ratified by the people on November 6, 1917, and took effect on October 1, 1918. The amendment provided that nothing therein contained shall prevent the Commonwealth or any political division thereof from paying to privately controlled hospitals and infirmaries not more than the ordinary and reasonable compensation for care or support actually rendered or furnished by such hospitals or infirmaries

to such persons as may be in whole or in part unable to support or care for themselves.

The most obvious answer to this contention is that the fund in question was given to and accepted by the town prior to the amendment. A contract was thereby created which under the Federal Constitution could not be impaired by any State enactment. *Cary Library* v. *Bliss,* 151 Mass. 364. *Adams* v. *Plunkett,* 274 Mass. 453, 462 et seq. One term of the contract was that if the administration of the charity in the exact way prescribed should become impracticable, the doctrine of cy pres could be applied. The amendment itself showed an intention not to interfere with the performance of "legal obligations, . . . already entered into." We need not consider whether there may not be another answer.

We are not satisfied that we can at this time upon the record before us direct an application of the fund that will be as nearly as possible in accord with the charitable intent of the testator. It is possible that wartime conditions have affected the facts reported by the master. It seems plain, however, that there should not be a duplication of hospital facilities in Milton, and that the fund should be consolidated in some way with the funds of Milton Hospital and Convalescent Home to prevent such a duplication. *State National Bank of Texarkana* v. *Bann,* 202 Ark. 850. But the fund should be applied "as near the testator's particular directions as possible." *Jackson* v. *Phillips,* 14 Allen, 539, 580, 584. *Attorney General* v. *Briggs,* 164 Mass. 561, 568. Whether the scheme suggested by the plaintiff meets that test may deserve consideration. The case is therefore referred to a single justice for the framing and settling of a scheme, either with or without the aid of a master, for the application of the fund cy pres. *Jackson* v. *Phillips,* 14 Allen, 539, 596. *Attorney General* v. *Goodell,* 180 Mass. 538. *Osgood* v. *Rogers,* 186 Mass. 238, 241. *Richardson* v. *Mullery,* 200 Mass. 247, 250. *Read* v. *Willard Hospital,* 215 Mass. 132, 135.

*Ordered accordingly.*