TRUSTEES OF THE PUTNAM FREE SCHOOL *vs.* ATTORNEY
GENERAL & others.

Essex.  May 13, 14, 1946. — July 2, 1946.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Charity. Trust,* Charitable trust. *Newburyport. Statute,* Validity. *Municipal Corporations,* Charter. *Putnam Free School.*

The provisions of the will creating in 1826 a trust (later a corporation
known as Trustees of the Putnam Free School), whose property was to
"remain a permanent fund" the income only of which was to be used
"for the establishment and support of a Free English School in New-
buryport for the instruction of youth wherever they may belong" "in
reading, writing and arithmetic, and particularly in the English lan-
guage, and in those branches of knowledge necessary to the correct
management of the ordinary affairs of life, whether public or private,
but not in the dead languages," with no provision for a gift over if
such trust should fail, disclosed a general charitable intent that the
trust property should be devoted to the general purpose of furnishing
a practical education to youth; and, it appearing that it had become
impracticable or impossible to carry out that intent in the precise
manner designated in the will by establishing and maintaining a
school, this court ordered the framing of a scheme for the application
of the trust fund cy pres.

The visitorial powers, conferred in 1826 upon the selectmen of the then
town of Newburyport and their successors in office in the will creating
the trust which later became the corporation known as Trustees of the
Putnam Free School, not only in regard to the selection and succession
of trustees but also as to investment of the trust funds and the appli-
cation of their income, did not constitute a part of the selectmen's
official powers, and provisions of the charter of Newburyport as a
city, purporting to transfer such visitorial powers to the mayor and
aldermen, were of no effect; this court directed a single justice to
appoint three competent and reputable citizens of Newburyport as
visitors.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Essex on December 14, 1943.

The material portion of the will of Oliver Putnam was as
follows: "The Residue of my property, I give and be-
queath for the establishment and support of a Free English
School in Newburyport for the instruction of youth wher-

ever they may belong. If at the final payment of the foregoing Legacies, it should amount to Fifty thousand dollars, the Executors will then pay it over as hereafter provided, but if not, they will retain it to accumulate until it amounts to that sum, and then pay it over to Trustees for that purpose to be appointed by the Selectmen of Newburyport, — After the first appointment of Trustees, vacancies in their board to be filled by nomination from them, subject to the approval of said Selectmen who besides are always and at all times to have and exercise the right of visitation for the purpose of looking to the security of the funds and that the interest or income of them is applied according to the bequest — In the selection of Trustees no reference is to be had to their places of residence but only to their qualifications for the Trust. The Trustees are to invest the whole principal in good and sufficient securities bearing interest or producing income, to the satisfaction of the said Selectmen, to be and remain a permanent fund, the interest or income only of which to be applied to the establishment and support of the School. The youth to be instructed in reading, writing and arithmetic, and particularly in the English language, and in those branches of knowledge necessary to the correct management of the ordinary affairs of life, whether public or private, but not in the dead languages —— The monitorial system of instruction to be introduced, and used, so far as it may be found on experience that it can be done with advantage."

A master found, among other facts, that in 1838 "trustees were appointed by the selectmen of Newburyport, in accordance with the provisions of the will, and the trust fund was paid over to the trustees so appointed"; and that by St. 1838, c. 85, "the trustees so appointed and their successors were incorporated."

St. 1838, c. 85, provided in § 1 that certain named persons "and their successors, are hereby made a corporation, by the name of the Trustees of the Putnam Free School, to be established in the town of Newburyport, in the county of Essex, with all the powers and privileges, and subject to all the restrictions and limitations, set forth in the forty-

fourth chapter of the Revised Statutes, with the liberty of holding and managing real and personal estate, the net income of which shall not exceed six thousand dollars, to be applied exclusively to the purpose of education, in conformity with the provisions in the will of Oliver Putnam, late of Boston, deceased"; and in § 3 that "The said trustees may remove any member of their board, when disqualified, by age or otherwise, to discharge the duties of his said office, by vote of two thirds of the other members, and, by a similar vote, shall fill any vacancy in their board, under the limitation and in the manner provided in the will of said Putnam."

The case was reserved and reported by *Ronan,* J.

*P. I. Lawton,* (*J. T. Connolly, Jr.,* with him,) for the plaintiff.

*E. Foss,* City Solicitor, for the city of Newburyport.

*F. H. Magison,* for heirs at law of Oliver Putnam.

*L. B. Phister,* Town Counsel, for the town of Newbury.

*C. A. Barnes,* Attorney General, *H. D. Robinson,* Assistant Attorney & *R. J. Cotter, Jr.,* for the Attorney General, submitted a brief.

RONAN, J. This is a bill in equity filed by the Trustees of the Putnam Free School, a charitable corporation, alleging that it holds property bequeathed by the will of Oliver Putnam for the purpose of establishing and maintaining a school at Newburyport, and that it has become impracticable to accomplish this purpose in the manner provided in said will, and praying for a decree authorizing the administration of the trust in a certain manner and for such other decree as may be appropriate. The suit was referred to a master, whose report has been confirmed. The suit was then reserved and reported to this court.

Oliver Putnam died testate in 1826, leaving the residue of his estate when it should amount to $50,000 to trustees, to be appointed by the selectmen of Newburyport, "for the establishment and support of a Free English School in Newburyport for the instruction of youth wherever they may belong." Vacancies in the board of trustees were to be filled by them, subject to the approval of the selectmen.

The funds were to be invested by the trustees and the income only used for the establishment and maintenance of the school. The selectmen had the powers of visitors to see that the trust funds were properly invested and that the income was used for the designated purpose. The will provided that "the youth . . . [should] be instructed in reading, writing and arithmetic, and particularly in the English language, and in those branches of knowledge necessary to the correct management of the ordinary affairs of life, whether public or private, but not in the dead languages."

The trust funds were paid to the trustees in 1838. Shortly thereafter the plaintiff was incorporated by St. 1838, c. 85, as a charitable corporation with power to hold real and personal estate, the net income of which should not exceed $6,000 and which was to be applied exclusively to the purpose of education in accordance with the will of the testator. The plaintiff erected a schoolhouse in 1848, and from that date to 1868 maintained a school in conformity with the provisions of the will. Fire destroyed a schoolhouse owned by the city in 1868 which was used as a high school for girls. The city made an arrangement with the plaintiff whereby the students at the girls' high school and also the students at the boys' high school were furnished accommodations in the plaintiff's schoolhouse. This building was used by the students of the public high school and by the students of the plaintiff jointly until the premises were taken by eminent domain by the city in 1902. The plaintiff has not since owned or occupied any school premises. The plaintiff thereafter entered into various arrangements with the city, which need not be detailed, whereby students selected by the plaintiff were educated in the public high school of Newburyport at the expense of the trust. Since 1868 numerous disagreements have arisen between the plaintiff and the city. See *Dickey* v. *Trustees of Putnam Free School,* 197 Mass. 468. There were on an average forty-five students selected by the plaintiff who attended the public high school each year from 1933 to 1943, when the plaintiff ceased to send any more students to the high school. The

plaintiff paid the city $4,500 each year for the tuition of these students. Nearly two thirds of these students resided in Newburyport, and they could have attended this high school and have taken courses in Greek and Latin without any expense to themselves or to the trust. Upon graduation the students who were sent to the high school by the plaintiff did not receive the usual diploma awarded to the regular pupils of the school but were given a Putnam Free School diploma. The plaintiff has ceased for years to have any voice in the management or supervision of the high school and has done little in the way of promoting the education of youth except paying $4,500 a year to the city for the tuition of the students selected and sent by the plaintiff to the high school.

The heirs at law contend that the testator had only one particular purpose in mind which was the establishment and maintenance of a school, and that, as his specific directions cannot now be carried out, the trust has failed and they take the trust property by way of a resulting trust. The answer to this contention depends upon the construction of the will. If the testator intended to do no more than to aid a particular charitable object or a particular institution and that has become impracticable or impossible, then the trust fails; but if the will discloses a general charitable intent that his property should be devoted to a charitable purpose, the general nature of which is described in the will, and if it has become impracticable or impossible to carry out the testator's intent in the precise manner designated by him, the property may be applied by the doctrine of cy pres to some charitable purpose within his general charitable intent. *Teele* v. *Bishop of Derry*, 168 Mass. 341, 343. *Richardson* v. *Mullery*, 200 Mass. 247. *Bowden* v. *Brown*, 200 Mass. 269. *Ely* v. *Attorney General*, 202 Mass. 545. *Holmes* v. *Welch*, 314 Mass. 106, 109, 110. *Milton* v. *Attorney General*, 314 Mass. 234, 238, 239.

The general purpose of the testator was to educate the youth, which has been construed in this will to mean both boys and girls. *Nelson* v. *Cushing*, 2 Cush. 519. He did not intend to confer upon Newburyport any benefit other

than that which might accrue from the location there of the school. The school was not to be considered a local institution. The trustees were not required to be residents of that city. They could reside elsewhere. The testator was interested in their qualifications and not where they might reside. The students were not to be restricted to any locality. His plan was to educate students "wherever they may belong." He took pains as to the particular courses to be furnished and such others as would prove to be of practical value in the ordinary affairs of life. There were to be no courses in Greek and Latin. He emphasized the educational aspect of his plan. His principal concern seems to have been to furnish a practical education for boys and girls. He gave no directions as to cost or dimensions of a school building. There is no mention of any structure, and there is nothing to indicate that he desired that the school should be a memorial. The acquisition of school premises was the means for accomplishing his main purpose, but it hardly can be said that he intended that his purpose should come to an end if the school premises were destroyed by fire or taken, as in fact they were, by eminent domain. He intended that his plan should continue throughout the ages. The principal of the trust was "to be and remain a permanent fund." · All the material provisions of the will are incorporated in the report of the master, and there is no limitation over in the event the trust should fail. We are of opinion that the trust has not failed and that, in order that the primary purpose of the testator may not be defeated, an appropriate plan should be framed to carry out, as nearly as the existing circumstances may permit, the charitable purpose of the testator. *Weeks* v. *Hobson*, 150 Mass. 377. *Attorney General* v. *Briggs*, 164 Mass. 561. *Ely* v. *Attorney General*, 202 Mass. 545. *Norris* v. *Loomis*, 215 Mass. 344. *Milton* v. *Attorney General*, 314 Mass. 234.

The principal of the trust amounts to $138,107.87 and the annual income to about $5,000. These amounts are inadequate to establish and maintain a school. The master reports that it is impossible to determine when the fund would become sufficient to carry out the purposes of the trust if it

were permitted to accumulate. The only accumulation that the testator provided for was that the fund should not be turned over to the trustees until it amounted to $50,000, and he apparently believed that this amount was ample to put and continue in effect his plan. The trustees ought not to be instructed to hold the fund until it will become sufficient to establish and support a school. *Ely* v. *Attorney General*, 202 Mass. 545. *Norris* v. *Loomis*, 215 Mass. 344. *Milton* v. *Attorney General*, 314 Mass. 234.

The selectmen were given broad visitorial powers by the testator not only in regard to the selection of the trustees but also in the investment of the trust funds and the application of the income. *Nelson* v. *Cushing*, 2 Cush. 519. The Legislature purported to transfer the visitorial powers of the selectmen to the mayor and aldermen by the first charter of Newburyport, St. 1851, c. 296. That city since 1919 has been governed by a Plan B charter. G. L. (Ter. Ed.) c. 43, §§ 1–45, 56–63, as amended. The power of visitors was conferred by the testator upon the individuals who from time to time should be the selectmen of the town in order to safeguard the proper administration of the trust. That was no part of their official duties as selectmen, and they were not accountable to the town for its faithful performance. The present municipal officers who have succeeded to the official powers and duties formerly possessed and exercised by the selectmen did not succeed to the personal powers and duties of visitors which those who happened to be selectmen possessed by the terms of the will of the testator. There are now no visitors of this trust. *Boston* v. *Doyle*, 184 Mass. 373.

It is plain that the arrangement made between the plaintiff and the city by which the plaintiff paid the city $4,500 a year for the tuition of the students selected and sent to the high school does not conform to the directions of the testator, and that a plan much nearer to such directions may be framed. Whether any of the suggestions made by the master should be adopted may merit consideration. It may be possible to establish scholarships and to arrange for courses of lectures or studies in some particular branches, or some other educational activities may be devised, which in

all the circumstances will best carry out the charitable purpose of the testator. The case is therefore referred to the single justice for the appointment of three competent and reputable citizens of Newburyport as visitors of the trust, and for the framing of a scheme either with or without the aid of a master for the application of the fund cy pres. *Jackson* v. *Phillips*, 14 Allen, 539, 596. *Attorney General* v. *Briggs,* 164 Mass. 561, 569, 570. *Grimke* v. *Attorney General*, 206 Mass. 49, 52. *Milton* v. *Attorney General*, 314 Mass. 234, 240.

*So ordered.*