TOWN OF BROOKLINE *vs.* CHARLES B. BARNES & another, trustees, & others.

Norfolk. May 4, 1949. — September 26, 1949.

Present: QUA, C.J., LUMMUS, SPALDING, & WILLIAMS, JJ.

*Charity. Devise and Legacy*, Charitable gift. *Municipal Corporations*, Charities, Trusts. *Trust*, Charitable trust. *Hospital*.

A provision of a decree, that a town, by accepting a legacy given to it "as a fund or part of a fund for the purpose of establishing and maintaining a public general hospital in the town," would not be obligated to establish and maintain such a hospital until the town should deem it expedient to do so, was erroneous, even with the added qualifying words in the decree, "but subject however at any time to the direction . . . of a court of equity."

A town, by accepting a legacy given to it "as a fund or part of a fund for the purpose of establishing and maintaining a public general hospital in the town," would become obligated to contribute such amount as might be necessary for the establishment and maintenance of such a hospital beyond the amount of the legacy and any other gifts which it might accept for those purposes where it appeared that the testator knew that the legacy was insufficient therefor and must have contemplated that contributions by the town or others would be necessary.

A purported acceptance by a town of a legacy given to it for a charitable purpose was rendered nugatory by its attempt to attach to the acceptance an inconsistent condition that certain obligations which would arise from an acceptance should not be imposed on it thereby.

A residual legacy to a town "as a fund or part of a fund for the purpose of establishing and maintaining a public general hospital in the town, the income from the same, until the establishment of such a hospital, to be used for the relief of sickness among the poor," without any gift over in the event that the legacy could not be applied to such purposes, revealed a general charitable intent on the part of the testator and presented a proper case for the application of the cy pres doctrine upon failure of the town to accept the legacy.

PETITION IN EQUITY, filed in the Probate Court for the county of Norfolk on February 2, 1948.

The case was heard by *Davis*, J.

*L. Bryant*, for certain respondents.

*D. G. Rollins*, for the petitioner.

*F. E. Kelly*, Attorney General, & *G. J. Barry*, Assistant Attorney General, submitted a brief.

SPALDING, J. Stephen G. Train died on May 6, 1920, leaving a will which was duly proved and allowed. In the seventh article of his will the testator left the residue of his estate to his trustees in trust to pay the income for life to several persons. This article provided that on the death of the survivor of the life beneficiaries the trustees were to apply the principal to the payment of fourteen charitable legacies and, after these had been satisfied, they were to pay over "15. All the rest and residue to the town of Brookline as a fund or part of a fund for the purpose of establishing and maintaining a public general hospital in the town, the income from the same, until the establishment of such a hospital, to be used for the relief of sickness among the poor."

All of the life beneficiaries have died and all of the legacies have been paid with the exception of that to the town of Brookline, hereinafter called the town. The residue of the estate, including accrued income, now in the hands of the trustees amounts to approximately $370,000. The trustees notified the town that all life interests under the trusts created in the will had been terminated and asked it whether it would accept the legacy. At the annual town meeting in March, 1946, the matter of the acceptance of the legacy was considered, and it was voted to refer the matter to a committee which was to make a report of its recommendations at the next town meeting. Such a committee was appointed and made a report, and at the next annual meeting held on March 25, 1947, the town voted to accept the committee's report and to adopt, with an exception not here material, the recommendations therein contained. The town voted to accept the bequest "provided that a court having jurisdiction shall first decide: (1) that under the terms thereof the town, upon such acceptance, shall be

under no obligation to establish and maintain a public general hospital until the town shall determine that it is expedient to do so, or (2) that the town, upon such acceptance, shall be under no obligation either (a) to make up any deficiency in funds necessary for the establishment and maintenance of such a hospital, beyond the aggregate received from said bequest and other bequests or gifts which may be accepted by the town for such purpose, or (b) to establish and maintain a public general hospital — for either acute or nonacute cases, or for both — of a size and character which would not be adequate and suitable for the needs of the inhabitants of the town for such respective types of public general hospital; or (3) that the bequest may be administered by the town under a cy pres scheme approved by the court and acceptable to the town." The vote also directed the selectmen of the town to take the necessary steps to obtain such a decree. Upon notification by the town of its action with respect to the legacy, the trustees informed the town that they did not regard such action as an acceptance of the gift. At the same time the trustees informed the town that since the controversy concerned "the consequences of acceptance rather than the construction of the will" they saw "no propriety in . . . [their] bringing a petition for instructions."

The present petition [1] was brought by the town seeking instructions and declaratory relief. The petition prayed that the trustees be instructed as to the construction of the will and particularly with respect to the nature of any conditions or obligations arising from the legacy in question, and as to whom and in what amounts the principal and income of the legacy should be paid. There is also a prayer that, if the fifteenth clause of Article 7 should not be construed in accordance with the first and second provisos contained in the vote of the town on March 25, 1947, a proper

---

[1] The following were named as respondents: the trustees named in the will, the executor under the wills of the widow (Mabel W. Train) and two sisters (Sarah B. and Minna Train) of the testator, the residuary legatees named in their wills (The First Church of Christ, Scientist, in Boston, and Edwin J. Pratt), and the Attorney General.

officer be appointed for the framing and settling of a scheme for the application of the fund cy pres.

The judge entered a decree declaring that the town is not obligated to establish and maintain a public general hospital until it deems it expedient to do so "but subject however at any time to the direction . . . of a court of equity"; that the town is not obligated to make up any "deficiency in funds necessary for the establishment and maintenance of such a hospital" beyond the amount of the bequest and such others as might be accepted by the town for that purpose; "that no declaration is made concerning subsection of paragraph two of the vote of the petitioner of March 25, 1947, to wit: 'to establish and maintain a public general hospital — for either acute or nonacute cases etc.' in that the present situation does not render it expedient to do so"; that the will manifested a general charitable intent "to create a fund to be used solely or as part of other funds to furnish hospital service in the town of Brookline of a type usually extended to the public by a general hospital, its application however cy pres to be subject to further direction . . . of a court of equity"; and that the residuary bequest in question is payable to the town and is to be held by it in accordance with the charitable uses and purposes set forth in the will. Appeals from this decree by the executor under the wills of the testator's widow and two sisters, and by Edwin J. Pratt, bring the case here.

At the outset it is necessary to decide whether there has been an acceptance of the legacy by the town. In deciding that question it is also necessary to determine what obligations would be incurred by the town in accepting the legacy. By the vote of March 25, 1947, the town's acceptance of the legacy was conditioned on an adjudication by a court either that it was under no obligation to establish and maintain a public general hospital until it deemed it expedient to do so, or that it was not required to make up any deficiency in funds necessary for the establishment and maintenance of such a hospital, beyond the amount received from the bequest in question and from others which

the town might accept for such purpose. If neither of these conditions could be imposed by the town, then it would follow that the legacy had not been accepted.[1]

We are of opinion that these conditions could not properly be imposed. The fund in question, as the parties concede, is far from adequate to carry out the purposes of the testator. The testator could not reasonably have supposed that the fund would be adequate within any period that he could foresee and must have contemplated that contributions by the town or others would be necessary. His use of the words "fund or part of a fund" in the bequest furnishes support for this conclusion. It is fair to assume, therefore, that he realized that a considerable time might elapse before the hospital was established. But because the testator may have contemplated some delay in the establishment of the hospital, it does not follow, as the decree provides and as the town and Attorney General contend, that the town upon accepting the legacy would be under no obligation to establish and maintain a public general hospital until it should determine it expedient to do so. Under such a construction the town would be under no obligation to build the hospital even if it had sufficient funds to do so. The standard is expediency, and what is expedient is to be determined by the town. Moreover, even if the town would be under an obligation to establish a hospital when it had sufficient funds, there is no assurance that this would occur within a reasonable time, and it might never happen. The qualifying words in the decree, "subject however . . . to the direction . . . of a court of equity," do not save the condition. Obviously supervision by a court of equity becomes virtually meaningless if full discretion with respect to the establishment of the hospital is vested in the town. We are of opinion that the testator did not intend to confer such discretion on the town.

The validity of the alternative condition imposed by the

---

[1] The town does not contend that the third condition, namely, "that the bequest may be administered by the town under a cy pres scheme approved by the court and acceptable to the town," was proper.

town, namely, that it was not obligated to make up any deficiencies in funds necessary for that purpose beyond the amount of the legacy and other gifts, presents a question of more difficulty. In support of its position the town relies heavily on *Milton* v. *Attorney General*, 314 Mass. 234. In that case the testator left the residue of his estate to "the town of Milton . . . for the purpose of establishing and maintaining a Public Hospital within said town." The town accepted the gift, and one of the questions for decision was whether the town by such acceptance became bound to supply from its own funds all the money needed, in addition to the gift, to build, equip and maintain the hospital. It was held that the acceptance of the gift "imported no contract to make up its deficiencies." The court distinguished the case from *Bowden* v. *Brown*, 200 Mass. 269, and *Adams* v. *Plunkett*, 274 Mass. 453. In each of those cases the gift to the town was for the establishment of a charitable institution but no fund for its maintenance was provided, and it was held in the *Adams* case, and intimated in the *Bowden* case, that upon acceptance the town was obligated to provide the funds for maintenance. In *City Bank Farmers Trust Co.* v. *Carpenter*, 319 Mass. 78, a bequest was given to the town of Shirley "the income thereof to be used for the maintenance of a Home for the Poor." The town accepted the gift, and this court held that the town thereby became obligated to acquire a home for the benefit of the poor and to apply the income from the bequest toward its maintenance. Thus it would seem that where a fund is bequeathed to a municipality for the establishment of a public charity (but with no provision for its maintenance) or for its maintenance (but with no provision for its establishment) the town upon acceptance becomes obligated to supply the deficiency, for otherwise the purpose of the testator could not be effectuated. The situation, however, is somewhat different where, as here, the bequest is for the establishment and maintenance of the institution. Such a bequest does not necessarily require contributions by the town in order to carry out the testator's intent. Essentially

the question in these cases is to determine what is necessary to effectuate the intention of the testator. In the *Milton* case the court was of opinion that the testator did not "contemplate any contribution by the town or anyone else." But that is not the case here. As we have pointed out above, the testator undoubtedly knew that the fund was insufficient and that further contributions would be necessary. We are of opinion, therefore, that an acceptance of the gift by the town would import an obligation on its part to make up any deficiencies in the funds necessary to establish and maintain the hospital. Inasmuch as the conditions imposed by the town are inconsistent with an acceptance of the gift, the purported acceptance was nugatory.

Since it is not possible to carry out literally the terms of the gift, it remains to consider whether the fund can be administered under the doctrine of cy pres. The governing principles of this doctrine have been frequently set forth in our decisions. See *Sanderson* v. *White*, 18 Pick. 328, 333; *American Academy of Arts & Sciences* v. *Harvard College*, 12 Gray, 582; *Jackson* v. *Phillips*, 14 Allen, 539, 580; *Attorney General* v. *Briggs*, 164 Mass. 561, 568–569; *Teele* v. *Bishop of Derry*, 168 Mass. 341, 343; *Bowden* v. *Brown*, 200 Mass. 269; *Bragg* v. *Litchfield*, 212 Mass. 148, 150–151; *Judkins* v. *Hyannis Public Library Association*, 302 Mass. 425, 427; *Holmes* v. *Welch*, 314 Mass. 106, 109–110; *Milton* v. *Attorney General*, 314 Mass. 234, 238–239; *Trustees of Putnam Free School* v. *Attorney General*, 320 Mass. 94, 98–99. In general it may be said that the applicability of the doctrine depends on the presence of a general charitable intent as distinguished from an intent to devote the property to a specific charitable purpose. It is easier to state the doctrine than to apply it, for generally, as in the case at bar, the question becomes one of construction — to ascertain the intention of the testator. We are of opinion that the testator had a general charitable intent with respect to the bequest in question. After providing for his widow and sisters, the testator left the entire residue of his estate to various charities. See *Norris* v. *Loomis*, 215 Mass. 344, 346. There

was no gift over. "The failure of the testator to make a gift over in the event that his specified purposes should prove impracticable is some indication of a general charitable intent." *Milton* v. *Attorney General,* 314 Mass. 234, 239. It is to be noted that the gift was "for the purpose of establishing and maintaining a *public general hospital* in the town" (emphasis supplied). There were no limitations as to size and location. Nor was it to be a memorial to the testator. There is nothing to show that the testator regarded it as essential that the town should be the trustee. See *Milton* v. *Attorney General,* 314 Mass. 234, 239. Also of significance is the fact that pending the establishment of the hospital the income from the fund was to be used for "relief of sickness among the poor." Aiding the sick of the town, and especially such of them as are poor, appears to be the dominant purpose of the testator. In our opinion the case is a proper one for the application of the cy pres doctrine.

The decree of the court below is reversed, and the case is remanded to the Probate Court for the framing and settling of a scheme, either with or without the aid of a master, for the application of the fund cy pres. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*